IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 MAY 24  PM 12: 10

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

RICHARD DOUGHTIE, III, United     )
States Bankruptcy Trustee for     )
VINCENT O'NEIL BROOKS,            )
                                  )
        Plaintiff,                )
                                  )
v.                                )     No. 03-2073 Ml/An
                                  )
ASHLAND, INC. d/b/a VALVOLINE     )
INSTANT OIL CHANGE,               )
                                  )
        Defendant.                )

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is the Motion for Summary Judgment of Defendant Ashland, Inc., d/b/a Valvoline Instant Oil Change, filed March 30, 2005.[1]  Plaintiff filed a response on May 4, 2005.  For the following reasons, Defendant's motion is GRANTED in part and DENIED in part.[2]

---

[1] Defendant's motion for leave to file a reply brief in support of its motion for summary judgment, filed May 13, 2005, is DENIED as moot because the Court, in this order, grants Defendant's motion for summary judgment without having considered Defendant's reply brief.

[2] Defendant filed a separate Statement of Undisputed Material Facts along with its motion. ("Def.'s SUMF"), to which Plaintiff did not respond as required by Local Rule 7.2(d)(3)("the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied ... shall respond to the proponent's numbered designations ... both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the
(continued...)

This document entered on the docket sheet In compliance
with Rule 58 and/or 79(a) FRCP on 5-24-05



## I. BACKGROUND AND RELEVANT FACTS

The instant case arises out of Defendant's termination of the employment of Vincent O'Neil Brooks on October 21, 2002.[3]  On February 3, 2003, Mr. Brooks filed his Complaint alleging that the termination violated his rights under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (the "FMLA").[4]

Mr. Brooks began working for Defendant on September 1, 1993. On October 21, 2002, his employment was terminated because he failed to call in to report an unexcused absence while on probation for poor job performance.  At the time his employment was terminated, Mr. Brooks, who is African-American, worked as a Service Center Manager at the Valvoline Instant Oil Change located on Mt. Moriah Rd. in Memphis, Tennessee.

---

(continued...)
opponent's contention that the proponent's designated material facts are at issue.").  Rather, Plaintiff included a narrative "Statement of Facts" section, in which Plaintiff did not dispute Defendant's statement of undisputed facts.  Accordingly, the Court finds that the facts relied upon by Defendant in its motion are not in dispute.

[3] The instant action was originally filed by Mr. Brooks.  On March 16, 2005, the Court granted Plaintiff's motion to amend his Complaint and substitute Richard Doughtie, III, the United States Bankruptcy Trustee for Mr. Brooks, as Plaintiff in this case.

[4] An Amended Complaint was filed on August 1, 2003, substituting Ashland, Inc. as Defendant.

As the Service Center Manager, Mr. Brooks was responsible for operating the service center and supervising six to seven employees, including assistant managers.  Johnny Zellerman, the Area Manager, was his immediate supervisor.  Rich Varel, the Regional Manager, was Mr. Zellerman's immediate supervisor.

In conjunction with his position, Mr. Brooks attended training classes on discrimination, harassment, equal employment opportunity, and Family and Medical Leave Act policies.  He had also terminated subordinate employees for failing to show up to work their scheduled hours.

Defendant maintains a Family and Medical Leave Act policy in the employee handbook that describes the procedure by which an employee may request leave under the FMLA.  With respect to taking FMLA leave, the policy provides that "[e]xcept in emergencies, you must give 30 days notice by filling out a 'Family Leave Form.'  This will allow [Valvoline] to arrange for job coverage." (Def.'s SUMF, Ex. 1 at 31.)  Mr. Brooks was familiar with Defendant's employee handbook and the policies and procedures within it, and distributed it to new employees.  The location at which Mr. Brooks worked also has a bulletin board, on which he was responsible for posting Defendant's policies and procedures, including the FMLA policy.

On or about September 9, 2002, Mr. Brooks received a Service Center Manager Performance Appraisal. (Def.'s SUMF, Ex. 3.)  On

3

that evaluation, which he signed, Mr. Brooks received an overall
score of four for each of the first three quarters of 2002, which
corresponds to "did not meet expectations." (Id.)  On or about
September 26, 2002, Mr. Zellerman met with Mr. Brooks to inform
him that, based upon his performance during the past six months,
he was being placed on probation for various reasons including
his failure to return phone calls, pages, and voicemails.  Mr.
Brooks was issued a probation form in conjunction with this
decision, which he signed.  (Def.'s SUMF, Ex. 4.)

On October 7, 2002, Mr. Brooks advised Mr. Zellerman that he
was scheduled for outpatient surgery the next day to have his
tonsils removed.[5]  A prescription from Dr. Larry Duberstein
indicates that Mr. Brooks was scheduled for outpatient surgery on
October 8, 2002, at 7:30 a.m. at Baptist East Hospital. (Def's
SUMF, Ex. 5.)  It is undisputed that Mr. Brooks did not fill out
a "Family Leave Form" before his surgery.  Between October 7,
2002, and October 20, 2002, Mr. Brooks did not have any
conversations with Mr. Zellerman, Mr. Varel, or anyone in
Defendant's Human Resources department.  During that time period,

---

[5] Mr. Brooks contends that he informed Mr. Zellerman that he
was going to have surgery on his tonsils as early as September
26, 2002, although the operation had not been scheduled at that
time.  Mr. Brooks also contends that, on September 26, 2002, he
verbally requested that he be put on medical leave, rather than
sick leave.

4

Mr. Zellerman tried to call Mr. Brooks several times.  Mr. Brooks was aware of Mr. Zellerman's efforts to reach him.

During that time period, Mr. Brooks was staying at his fiancé's home and contends that he was unable to speak.  At some point, Mr. Brooks's brother called an Assistant Manager at Valvoline, Joseph McCaig, to let him know that Mr. Brooks was not going to make it to work during the week he had hoped to be back. Mr. Zellerman was notified that Mr. Brooks's brother had called to state that he would not be in to work during the week ending October 11.

Mr. Brooks also mailed his hospital discharge papers to Mr. Zellerman along with a hand-written note from Mr. Brooks stating that he would return to work on October 19, 2002.[6]  (Deposition Excerpts of Vincent O'Neil Brooks ("Brooks Dep."), Docket No. 55, at 213.)[7]  It is undisputed that Mr. Brooks did not send Mr. Zellerman a doctor's note indicating when he would be able to return to work. (Id. at 214.)  Mr. Brooks also admits that nothing in the papers he mailed to Mr. Zellerman indicated that he was unable to return to work. (Id. at 322.)  Sometime prior to October 20, 2002, Mr. Brooks spoke to Erin Norry at Valvoline and

---

[6] Neither party has introduced into the record copies of the papers mailed by Mr. Brooks.

[7] The handwritten note written by Mr. Brooks stated "date back to work, 10/19/02." (Brooks Dep. at 213.)

5

informed him that he would return to work on October 20, 2002.
Mr. Brooks reported to work on October 20, 2002.

Mr. Brooks admits that, from the time he was discharged from
the hospital until he returned to work on October 20, 2002, his
only contact with Dr. Duberstein, who performed his surgery, was
on October 18, 2002.[8] (Id. at 322.)  His first follow-up visit
with Dr. Duberstein after his October 7, 2002, surgery was on
October 31, 2002. (Id.)

On or about October 20, 2002, Mr. Zellerman contacted the
Human Resources department and Mr. Varel regarding Mr. Brooks.
Based upon his being on probation, as well as his failure to
report to work after his surgery, the Human Resources Department
and Mr. Varel decided to terminate Mr. Brooks.  On October 21,
2002, Mr. Brooks was discharged.

On October 31, 2002, Mr. Brooks filed a charge of race
discrimination with the Equal Employment Opportunity Commission
("EEOC").  Mr. Brooks subsequently received a notice of right to
sue letter dated November 5, 2002.  In support of his claim, Mr.
Brooks contends that he was replaced as Service Center Manager by
a white male, Chris Bing, and that a similarly situated Causasian
manager, Michael Kenslow, was not treated in the same manner
after he was absent from work for several weeks following
reproductive organ surgery in May of 2002.

_____

[8] It appears that this contact was by telephone.

6

Mr. Brooks further contends that, during his tenure as Service Center Manager, he terminated the employment of three African-American employees, with Mr. Zellerman's approval. However, on two occasions when he recommended termination of white employees, he was overruled by Mr. Zellerman and not allowed to terminate their employment, even though one employee had shoved him.  Additionally, Mr. Brooks contends that, during October of 2002, Mr. Zellerman told him that there were too many black employees working at the Mt. Moriah store, and that he intended to racially balance the work crews.  (Brooks Dep. at 167:3-168:7; 168:20-21).  Specifically, Mr. Brooks testified at his deposition that Mr. Zellerman told him that the Mt. Moriah location was not as profitable as it could have been "because there [were] not enough mixed employees in that location" (Brooks Dep. at 169:1-5) and that Mr. Zellerman asked him "[b]y you having a lot of black employees at your store, do you think that that is intimidating to the customers that come in in your area?" (Brooks Dep. at 168:16-18).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

7

as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the
movant has met its initial burden of "demonstrat[ing] the absence
of a genuine issue of material fact," Celotex, 477 U.S. at 323,
and the nonmoving party is unable to make such a showing, summary
judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353
(6th Cir. 1989). In considering a motion for summary judgment,
"the evidence as well as all inferences drawn therefrom must be
read in a light most favorable to the party opposing the motion."
Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir.
1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary
judgment, the nonmoving party "must set forth specific facts
showing that there is a genuine issue for trial." Fed. R. Civ.
P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159
F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact
exists for trial "if the evidence [presented by the nonmoving
party] is such that a reasonable jury could return a verdict for
the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986). In essence, the inquiry is "whether the
evidence presents a sufficient disagreement to require submission
to a jury or whether it is so one-sided that one party must
prevail as a matter of law." Id. at 251-52.

8

### III. ANALYSIS

Defendant moves for summary judgment regarding Plaintiff's claims of discrimination under the FMLA, Title VII, and the ADA. The Court will address these claims in turn.

#### A. The Family and Medical Leave Act

Defendant first moves for summary judgment regarding Plaintiff's claim under the FMLA.  The FMLA requires employers to provide up to twelve workweeks of leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA.  29 U.S.C. § 2615(a)(1).  Further, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." Cavin v. Honda of America Mfg., Inc., 346 F.3d 713, 726 (6th Cir. 2003)(citing 29 C.F.R. § 825.220(c)).

Defendant first contends that Mr. Brooks did not qualify for FMLA leave because he did not suffer from a "serious health condition."  A "serious health condition" is defined by the FMLA as "an illness, injury, impairment, or physical or mental condition that involves ... inpatient care in a hospital,

9

hospice, or residential medical care facility; or ... continuing treatment by a health care provider." 29 U.S.C. § 2611(11). United States Department of Labor regulations implementing the FMLA define a "serious health condition" involving continuing medical treatment by a medical provider as one that involves:

> A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days ... that <u>also</u> involves: (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114 (emphasis added), quoted in <u>Perry v. Jaguar of Troy</u>, 353 F.3d 510, 514-15 (6th Cir. 2003).

Drawing all inferences in favor of the Plaintiff, the record indicates that Mr. Brooks may have been incapacitated due to surgery on his tonsils for more than three consecutive calendar days. However, Plaintiff fails to point to any evidence in the record to show that Mr. Brooks's condition involved treatment two or more times by a health care provider or treatment by a health care provider on at least one occasion which resulted in a regimen of continuing treatment under the supervision of the health care provider. <u>See</u> 29 C.F.R. § 825.114; <u>see also</u> <u>Lackey v. Jackson County, Tennessee</u>, No. 03-5193, 104 Fed. Appx. 483,

2004 WL 1491636 at * 4 (6th Cir. June 22, 2004); (finding plaintiff did not suffer from "serious health condition" despite chronic back problems, diabetes and high blood pressure where employee failed to produce evidence that he was incapacitated due to his health problems for more than three days.). Rather, it is undisputed that Mr. Brooks's first follow-up appointment with the doctor who performed the surgery was on October 31, 2002, 11 days after Mr. Brooks returned to work. Accordingly, Plaintiff fails to establish that Mr. Brooks suffered from a "serious health condition" under the FMLA.

Even if Plaintiff were to establish that Mr. Brooks suffered from such a condition, however, the undisputed evidence shows that Mr. Brooks failed to provide sufficient notice of his asserted request for FMLA leave. When an employee's need for FMLA leave is foreseeable, an employee who wishes to request leave under the FMLA must generally provide thirty days' notice to the employer. 29 U.S.C. § 2612(e).[9] When the need for FMLA

---

[9] Specifically, the FMLA requires that an employee:
    shall provide the employer with not less than 30 days'
    notice, before the date the leave is to begin, of the
    employee's intention to take leave under such
    subparagraph, except that if the date of the treatment
    requires leave to begin in less than 30 days, the
    employee shall provide such notice as is practicable.
29 U.S.C. § 2612(e)(2)(B). The employee need not expressly
mention the FMLA when requesting leave, but must convey to the
employer information reasonably adequate to apprise the employer
of the employee's request to take leave for a serious health
condition. 29 C.F.R. § 825.302(c).

leave is not foreseeable, an employee "should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." 29 C.F.R. § 825.303(a). In light of the FMLA and the relevant Department of Labor Regulations implementing the statute, the United States Court of Appeals for the Sixth Circuit has described the notice requirement of the FMLA as follows:

> To invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave. However, an employee does not have to expressly assert his right to take leave as a right under the FMLA. Because an employee need not expressly invoke the FMLA, the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition. An employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the [FMLA] has occurred ... What is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case.

Cavin, 346 F.3d at 723-24 (citations and internal quotation marks omitted).

Here, drawing all inferences in favor of Plaintiff, Defendant was aware that Mr. Brooks was undergoing outpatient surgery on his tonsils, that he would not be able to make it to

12

work during the week he had hoped to return, that he originally planned to return to work on October 19, 2002, and later that he would return to work on October 20, 2002.[10]  It is undisputed, however, that Mr. Brooks did not provide Defendant with any medical documentation to show the extent or seriousness of his condition or any time frame upon which he was medically cleared to return to work.  The Court therefore finds that the above facts did not provide Defendant with enough information to "reasonably conclude that an event described in the [FMLA] has occurred."[11] Cavin, 346 F.3d at 723-24.  Accordingly, Mr. Brooks did not provide Defendant with adequate notice that an FMLA-qualifying event had occurred.  Defendant's motion for summary judgment is therefore GRANTED regarding Plaintiff's claim under the FMLA.

---

[10] To support all of the above contentions, Plaintiff cites portions of Mr. Brooks's deposition which are not attached to Plaintiff's motion and which have not been filed with the Court. Accordingly, those portions of Mr. Brooks' deposition are not within the record before the Court.

[11] In his response to Defendant's motion, Plaintiff also contends that Mr. Brooks verbally requested to be on medical leave, not sick leave, prior to his surgery. (Pl.'s Mem. of Law in Supp. of Pl. Richard T. Doughtie, III's Resp. and Obj. to Def. Ashland, Inc. d/b/a Valvoline Instant Oil Change's Mot. for Summ. J. at 3.)  To support that contention, however, Plaintiff cites a portion of Mr. Brooks's deposition which is not attached to Plaintiff's motion and which has not been filed with the Court. Accordingly, that portion of Mr. Brooks' deposition is not within the record before the Court.

**B. Title VII**

Defendant next moves for summary judgment regarding Plaintiff's claim of race discrimination under Title VII.  In the absence of direct evidence of discrimination, race discrimination claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and refined in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).  Under this approach, a plaintiff must first establish a *prima facie* case of discrimination.  Burdine, 450 U.S. at 252. Establishing a *prima facie* case creates a rebuttable presumption that the employer engaged in unlawful discrimination.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).  Once the plaintiff has established a *prima facie* case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action.  Burdine, 450 U.S. at 252-53.  The burden is not onerous.  An employer will satisfy its burden as long as it articulates a valid rationale for its decision.  Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996).

If the employer meets this burden, the plaintiff may still prevail if he shows that the reasons offered by the defendant are a pretext for discrimination.  Burdine, 450 U.S. at 253.  To prove pretext, the plaintiff must introduce admissible evidence to show "that the proffered reason was not the true reason for the employment decision" and that racial animus was the true

14

motivation driving the employer's determination.  Hicks, 509 U.S.
at 508.  Throughout the analysis, the ultimate burden of proof
remains with the plaintiff.  Id. at 511.

Alternatively, a plaintiff may establish a *prima facie* case
of discrimination by presenting "direct evidence of
discriminatory intent."  Nguyen v. City of Cleveland, 229 F.3d
559, 563 (6th Cir. 2000)(citing Price Waterhouse v. Hopkins, 490
U.S. 228 (1989)).  For example, "a corporate decision maker's
express statement of a desire to remove employees in the
protected group is direct evidence of discriminatory intent."  Id.
(citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121
(1985); LaPointe v. United Autoworkers Local 600, 8 F.3d 376,
379-80 (6th Cir. 1993).  "In direct evidence cases, once a
plaintiff shows that the prohibited classification played a
motivating part in the employment decision, the burden of both
production and persuasion shifts to the employer to prove that it
would have terminated the employee even if it had not been
motivated by impermissible discrimination."  Id. (citations
omitted).

A plaintiff may also prove discrimination through a mixed-
motive theory of discrimination.  In a mixed-motive case, an
adverse employment decision is the result of a mixture of
legitimate and illegitimate motives.  Wexler v. White's Fine
Furniture, Inc., 317 F.3d 564, 571 (6th Cir. 2003).  In such a

15

case, the plaintiff must show that unlawful discrimination was a motivating factor in the adverse employment decision through either direct or circumstantial evidence.  <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 101 (2003).  Once a plaintiff shows that an employer relied in part on illegitimate factors in making its adverse employment decision, the burden then shifts to the employer to prove by a preponderance of the evidence that the same decision would have been made without considering the illegitimate factors.  <u>Wexler</u>, 317 F.3d at 571.

In this case, Plaintiff contends that Mr. Brooks was treated less favorably than a similarly situated Caucasian employee who was not terminated following a medical absence, and/or that he was terminated due to his race and replaced by a Caucasian employee.  Defendant contends that Plaintiff cannot establish a *prima facie* case of discrimination because Plaintiff fails to point to any evidence in the record to show that the individual was similarly situated or that Mr. Brooks was treated less favorably than he was.  Defendant further contends that Mr. Brooks's poor job performance provided a legitimate non-discriminatory reason for Mr. Brooks's termination, which Plaintiff cannot show was pretext for discrimination.

To establish a *prima facie* case of race discrimination, a plaintiff must show that: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was

16

qualified for the position; and (4) he was replaced by someone
outside the protected class or was treated differently from a
similarly situated employee outside his protected class.
<u>Warfield v. Lebanon Corr. Inst.</u>, 181 F.3d 723, 728-29 (6th Cir.
1999).  Here, there is no dispute that Mr. Brooks was a member of
a protected class based upon his race (African-American), that he
suffered an adverse employment action (termination), and that he
was qualified for the position of Service Center Manager.[12]
Plaintiff further points to evidence that Mr. Brooks was replaced
by an employee outside his protected class.[13]  Accordingly,
Plaintiff has established a *prima facie* case of race
discrimination.

   Moreover, there is direct evidence in the record of
discriminatory intent.  Specifically, the statements which Mr.
Brooks alleges were made by Mr. Zellerman regarding there being

---

[12] Although Defendant claims that Mr. Brooks was not
qualified for the position on account of his poor performance,
such a consideration is properly taken into account during the
Court's evaluation of Defendant's purported legitimate non-
discriminatory reason for terminating Mr. Brooks, rather than at
the *prima facie* stage. <u>See</u> <u>Cline v. Catholic Diocese of Toledo</u>,
206 F.3d 651, 661 (6th Cir. 2000)(finding District Court
committed reversible error by considering evidence of poor job
performance with respect to the question of whether an employee
was qualified for the position).

[13] Mr. Brooks contends that he was replaced by a Caucasian
named Chris Bing, based upon his observation of Mr. Bing working
at the Mt. Moriah Valvoline location.  Although Defendant
contends that Mr. Bing and Mr. Brooks were not similarly
situated, that analysis does not pertain to whether Mr. Brooks
was replaced with an individual outside his protected class.

17

too many African-American employees working in the Mt. Moriah store and his desire to racially balance the work crews, if proven true, would be direct evidence of discriminatory intent. Accordingly, the burden would then shift to Defendant to show that it would have terminated Mr. Brooks even if it had not been motivated by impermissible discrimination.

Defendant has articulated a legitimate non-discriminatory reason for Mr. Brooks's termination - namely, that Mr. Brooks failed to promptly notify Defendant of his return date and provide medical documentation for his absence, after having been put on probation for poor job performance. However, because there exists evidence in the record which, if proven true, would establish direct discriminatory intent, a genuine issue of material facts exists regarding whether Defendant would have terminated Mr. Brooks even if it had not been motivated by impermissible discrimination. Accordingly, Defendant is not entitled to summary judgment regarding Plaintiff's claim of discrimination under Title VII.

### C. The ADA

Defendant next moves for summary judgment regarding Plaintiff's claim under the Americans with Disabilities Act. Specifically, Defendant contends that Mr. Brooks failed to exhaust his administrative remedies and, even if he had satisfied the exhaustion requirements, Plaintiff cannot establish that Mr.

18

Brooks was a qualified individual with a disability or was terminated due to any disability.

"Federal courts do not have subject matter jurisdiction of [ADA] claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge."  See Jones v. Sumser Retirement Vill., 209 F.3d 851, 853 (6th Cir. 2000)(citation omitted).  Here, Mr. Brooks filed an EEOC charge alleging race discrimination, but not disability discrimination.  The narrative portion of the EEOC charge reads as follows:

> I was discharged from the position of Service Center Manager by the above named employer on October 20, 2002.  I was told that I was discharged because I was a no-call, no-show for several days.  I made my manager aware prior to this alleged act that I was going to the doctor to seek medical attention, up to and including surgery, on my tonsils, which impacted on my ability to speak.  I am aware that a similarly situated White male manager was not treated in the same manner after he was off several weeks following reproductive organ surgery in May 2002.  I was hired by the company on September 1, 1993.  I have been replaced by a White male.
> I believe that I was discriminated against because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Pl.'s Compl., Ex. 1.)  Based upon the EEOC charge and the relevant law, the Court finds that an ADA claim could not reasonably be expected to grow out of the EEOC charge, and therefore that the Court does not have subject matter jurisdiction over Plaintiff's ADA claim.

19

Even if this Court could exercise subject matter
jurisdiction over Plaintiff's ADA claim, however, no genuine
issues of material fact exist and Defendant is entitled to
judgment as a matter of law regarding Plaintiff's ADA claim.

To establish a *prima facie* case of discrimination under the
ADA, a plaintiff must show that he: (1) is disabled under the
meaning of the ADA; (2) is otherwise qualified to perform the
essential function of the job; and (3) that the employer
terminated him due to the disability. Gantt v. Wilson Sporting
Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998)(citation omitted).
In order to prove that he is disabled under the ADA, a plaintiff
must show that he (1) has a physical or mental impairment that
substantially limits one of more of his major life activities; or
(2) that he has a record of such an impairment; or (3) that he is
regarded as having such an impairment.  See 42 U.S.C. § 12102(2).

Plaintiff points to no evidence in the record to show that
Mr. Brooks's tonsilitis substantially limited one or more of his
major life activities, that he had a record of such an
impairment, or that he was regarded as having such an impairment.
Accordingly, Plaintiff cannot establish a *prima facie* case of
disability discrimination.[14]  Even if Plaintiff were able to

---

[14] In his response to Defendant's motion, Plaintiff does not
specifically respond to Defendant's contention that his ADA claim
must fail.  The Court assumes that Plaintiff contends that Mr.
Brooks's tonsilitis formed the basis of his disability claim.

establish a prima facie case of disability discrimination, however, Defendant has articulated a legitimate nondiscriminatory reason for Mr. Brooks's termination - namely, that Mr. Brooks failed to promptly notify Defendant of his return date and provide medical documentation for his absence, after having been put on probation for poor job performance.   Plaintiff points to no evidence in the record to show that Defendant's reason was pretext for disability discrimination.   Defendant's motion for summary judgment is therefore GRANTED regarding Plaintiff's claim of discrimination under the ADA.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.   Defendant's motion for summary judgment is GRANTED with respect to Plaintiff's claims under the FMLA and the ADA, which are hereby DISMISSED with prejudice.   Defendant's motion for summary judgment is DENIED with respect to Plaintiff's claim of race discrimination under Title VII. Plaintiff's Title VII claim will therefore proceed to trial.

So ORDERED this 24 day of May, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 90 in case 2:03-CV-02073 was distributed by fax, mail, or direct printing on May 24, 2005 to the parties listed.

---

Richard T. Doughtie
239 Adams Ave.
Memphis, TN 38103

Robert M. Williams
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Patricia A. Odell
LAW OFFICE OF PATRICIA ODELL
1374 Madison Ave.
Memphis, TN 38104

Angie Davis
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Honorable Jon McCalla
US DISTRICT COURT